# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 20-0135V
UNPUBLISHED

|  |  |
|---|---|
| RONALD PICCOLOTTI, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 31, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*William E. Cochran, Jr., Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN , for Petitioner.*

*Bridget Corridon, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On February 6, 2020, Ronald Piccolotti filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine he received on November 24, 2018. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the total amount of **$45,000.00**, **for Petitioner's actual pain and suffering.**

## I.      Relevant Procedural History

On February 6, 2020, Petitioner filed the present claim. Petition at 1. Fourteen months later, Respondent filed a status report stating he was "willing to enter into negotiations with petitioner as to a possible settlement in this case." ECF No. 22. Over the next ten months, the parties attempted to resolve this case, but were unsuccessful. ECF No. 31. I ordered Respondent to file the Rule 4(c) Report to identify the issues of disagreement in this case.

On May 9, 2022, Respondent filed the Rule 4(c) report contesting entitlement, stating that Petitioner's SIRVA claim failed because he could not demonstrate the third SIRVA criterion, i.e., that his pain was limited to his left shoulder. Respondent's Report at 4.

On May 18, 2022, I issued a detailed Scheduling Order reviewing the evidence in the case and setting forth my preliminary determination that I found Respondent's argument to be weak and unpersuasive, and stating that I was likely to rule in Petitioner's favor on this issue. ECF No. 36. I ordered the parties to determine whether they could resolve the case based on my preliminary determinations. *Id*. The parties remained unable to resolve the matter and a Scheduling Order was issued for the parties to brief both the issues of entitlement and damages for my determination. ECF No. 40.

On August 22, 2022, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages ("Motion"), arguing that Petitioner had established entitlement to compensation for a SIRVA injury, and requesting $85,000.00 for Mr. Piccolotti's pain and suffering. ECF No. 42. Petitioner specifically asserted that Respondent's reliance on a single notation in the record was "rooted in the misapprehension" that it was dispositive of the claim. Motion at 11.

Respondent filed a Response to Petitioner's Motion on November 18, 2022 ("Response") recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 44. Respondent argued that Petitioner had not established that he suffered a left-side SIRVA due to the flu vaccination, because of a notation in the record that stated that Petitioner "felt immediate pain and numbness *down* [h]is L[eft] U[pper] E[xtremity].") *Id*. at 6 (emphasis added). Respondent also stated that if I determined that Petitioner were entitled to compensation, an award of no more than

$40,000.00 was reasonable, fair, appropriate, and supported by the evidence and case law. *Id*. at 2. Petitioner filed a Reply on December 6, 2022. ECF No. 47.

This case was set for an expedited "Motions Day" hearing, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. The Motions Day hearing took place on March 24, 2023. Minute Entry dated March 24, 2023. After the argument, I orally ruled on Petitioner's entitlement to compensation and made a damages determination as well. This Decision memorializes those findings/determinations.

## II.    Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only criteria that Respondent has argued that Petitioner failed to prove is the third criterion, i.e., that Mr. Piccolotti's pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered. Response at 6. Respondent argued that the record "clearly details that petitioner was experiencing pain and numbness *down* his left upper extremity, which necessarily is outside of petitioner's shoulder." *Id*.

I find that the evidence in the record preponderantly supports a finding that Mr. Piccolotti's pain and reduced range of motion was limited to his left shoulder. I continue to find Respondent's argument focusing on this one item of evidence to be weak and unpersuasive. The single record notation in question specifically referenced Mr. Piccolotti's left *upper* extremity. As such, it could refer to Petitioner's left deltoid, and it could also be interpreted as stating that Petitioner only felt numbness in his left upper extremity – again allowing for the conclusion that pain *was* felt in the shoulder itself. And otherwise, there is ample record support for the situs of injury as left shoulder-oriented.

I therefore find that Mr. Piccolotti's pain and reduced range of motion was limited to his vaccinated left shoulder. Accordingly, all elements of the SIRVA claim have been met.

### C. Other Requirements for Entitlement

As stated above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e., receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. I therefore find that Petitioner is entitled to compensation in this case.

### D. Damages

#### a. The Parties' Arguments

Citing four[4] prior damages determinations, Petitioner requests $85,000.00 in pain and suffering. Motion at 23. Petitioner asserts that his course of treatment (including Advil,

---

[4] Petitioner discusses the following cases in her Motion: *Pruett v. Sec'y of Health & Human Servs.*, No. 17-561V, 2019 WL 3297083, at *2-3 (Fed. Cl. April 30, 2019)(Special Master Dorsey); *Goring v. Sec'y of Sec'y of Health & Human Servs.*, No. 16-1458v, 2019 WL 6049009 (Fed. Cl. Spec. Mstr. Aug. 23, 2019) (Special Master Dorsey); *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461v, 2018 WL 6293201, at *10 (Fed.

ice, heat, massage, Vicodin, Medrol, an ultrasound, an MRI, NCS/EMG, home exercise program, and two steroid injections), is comparable to the aforementioned non-surgical SIRVA cases and warrants an award at that level. Motion at 15-17.

Respondent, by contrast, proposes an award of no more than $40,000.00 for pain and suffering. Response at 15-19. He argues that "petitioner's pain was mild and limited, and that his case is distinguishable from those he cites." *Id.* at 11. Respondent cites to three cases[5] where the petitioner was awarded between $55,000.00 to $58,000.00 arguing that these cases are more analogous than the cases cited by Petitioner, and that a lesser amount is appropriate given the distinguishing factors in each of the cases. Response at 14-15.

### b. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. [6]

---

Cl. Spec. Mstr., Oct. 18, 2018) (Special Master Dorsey); *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr., Feb. 1, 2018) (Special Master Dorsey).

[5] Respondent discusses the following cases in his Response: *Roth v. Sec'y of Health & Human Servs.*, No. 19-0944v, 2021 WL 4469920 at *1-2 (Fed. Cl. Spec. Mstr. Aug. 31, 2021); *Rayborn v. Sec'y of Health & Human Servs.*, No. 18-0226v, 2020 WL 5522948, at *2-3 (Fed. Cl. Spec. Mstr. Aug. 14, 2020), and *Norton v. Sec'y of Health & Human Servs.*, No. 19-1432v, 2021 WL 4805231, at *5-6 (Fed. Cl. Spec. Mstr. Sept. 14, 2021).

[6] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### c.   Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Mr. Piccolotti was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of his injury. When performing this analysis, I review the same record relied upon to determine entitlement, including the filed affidavits and medical records, written briefs, and argument at the Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases.

Mr. Piccolotti averred that "[a]s soon as the vaccination was administered, my left arm was in tremendous pain. I had to place my left arm in the pocket of my sweatshirt to walk out of the pharmacy. That night at home I took Advil, tried ice and heat on my shoulder and got my girlfriend to massage my shoulder. None of this helped with the pain, which prevented me from sleeping that evening." Ex. 1 at 1. The next day, Petitioner stated that he took a leftover Vicodin from a previous prescription for knee pain, but it did not help with the pain. *Id*. at 2. Mr. Piccolotti stated that he earns his living by designing and building custom homes. Ex. 15 at 3. The second day post-vaccination, he stated that he went to work in a supervisory capacity only. Ex. 1 at 2.

Ten days post-vaccination, on December 4, 2018, Mr. Piccolotti presented to his primary care physician complaining of left shoulder pain since receiving the vaccination. He mentioned that he "was looking up symptoms online and found something called SIRVA." Ex. 30 at 20. The physician's assessment was tendinitis of the left shoulder. *Id.* Mr. Piccolotti was prescribed a Medrol Dosepak and advised to follow up in two weeks. *Id.* By January 2019, Mr. Piccolotti had retained an attorney.

Over the course of the next few months, Mr. Piccolotti underwent EMG and MRI studies. The MRI findings were mild, revealing "perhaps distal supraspinatus tendinosis without evidence of a tear," and mild degenerative changes of the AC joint. Ex. 3 at 28. The EMG/NCS revealed no shoulder pathology, only carpal tunnel syndrome. *Id.* at 29. Mr. Piccolotti's physical examinations revealed only a very mild limited range of motion and by March 2019, he had negative impingement and normal strength. Ex. 9 at 4-6.

From mid-March 2019 to August 2019, Petitioner received no treatment for his pain. In August 2019, Mr. Piccolotti returned to his orthopedist with complaints of left shoulder pain. Ex. 6 at 35-38. At this time, he did have positive impingement signs, but his strength was normal. He received a cortisone injection during this visit and was prescribed a home exercise program. *Id.*  By September 25, 2019, Mr. Piccolotti exhibited a normal range of motion and normal strength although he continued to complain of pain.

Ex. 13 at 6-8.

Thereafter, for more than two years (September 2019 to January 2022) Mr. Piccolotti did not seek any treatment for his shoulder. Ex. 14 at 8-11. In his affidavit, Mr. Piccolotti stated that while he did not seek treatment during this time, "my shoulder pain persisted and varied between 3 and 8, depending on what I was doing during the day or how much I pushed myself." Ex. 15 at 1. He also stated that during the COVID pandemic, he spent significant time with his in-laws, who were in their late 70s, and he did not want to risk seeking treatment when his orthopedist already told him there was not much they could do for him. *Id*. at 1-2.

When Mr. Piccolotti returned to his orthopedist in January 2022, he exhibited mostly normal strength although he was assessed with "exacerbation" of the left rotator cuff tendinitis and bicep tendinopathy. Ex. 14 at 8.  He received a second steroid injection and was instructed to continue with his home exercise program. *Id.*

In March and August 2022, Mr. Piccolotti was seen by his orthopedist with continued complaints of shoulder pain. Ex. 16 at 7-28. He exhibited positive impingement signs and decreased bicep strength. *Id*. at 7-14. In September 2022, Mr. Piccolotti underwent a second MRI  which showed "[t]endinopathy of the rotator cuff without evidence of a tear. Moderate acromioclavicular arthrosis. Borderline tenosynovitis of the long head of the biceps tendon is not excluded." Ex. 16 at 31.

Mr. Piccolotti stated that he still suffers from pain in his left shoulder to this day. Ex. 15 at 2. He states that he is limited in his work activities and that he has had to alter activities he once enjoyed, such as bowhunting and exercise. *Id*. at 3. Petitioner also stated that his injury has affected his ability to care for his wife who had broken her hip and needed his assistance. *Id*.

The parties' comparable case citations were reasonable, but not all were fully useful in helping me to calculate pain and suffering. In particular, Petitioner's comparable cases featured pain and suffering awards well in excess of what is appropriate in a non-surgery SIRVA case like the present. In addition, Petitioner did not cite to a single SIRVA case that I decided in the context of SPU. While I certainly consider cases decided by other special masters for guidance, cases where I have already ruled in similar circumstances are particularly helpful, since it has been my goal in SPU (and in promulgating "Motions Day" as well) to fashion consistent results that might guide the parties in future damages disputes.

I also note that in all the cases cited by Respondent, the awards for pain and suffering ranged from $55,000.00 to $58,000.00, although in his brief and during the

hearing, Respondent did distinguish these cases by describing the more extensive treatment courses the petitioner underwent and severity of the shoulder injury involved. Response at 14-16.

In sum, Petitioner's SIRVA injury was on the milder side – as corroborated by the significant length of the treatment gap of more than two years during his treatment course. This gap is difficult to ignore, and indicates that the injury was not so severe that Mr. Piccolotti felt the need to return to his physician on a more regular or urgent basis. Otherwise, Mr. Piccolotti's treatment was very conservative. There was no surgery recommended, and Petitioner underwent no formal physical therapy (although he did have a home exercise program). However, I acknowledge that Petitioner's overall treatment course was lengthy, and thus Respondent's proposed award is slightly too low, although overall the aforementioned considerations lead me to steeply discount the amount requested by Petitioner.

Under such circumstances, and considering the arguments presented by both parties, a review of the cited cases, and based on the record as a whole, I find that $45,000.00 in compensation for Mr. Piccolotti's pain and suffering, is reasonable and appropriate in a non-surgery SIRVA case like the present.

### E. Conclusion

In light of all of the above, the I award **a lump sum payment of <u>$45,000.00</u>, (for actual pain and suffering**) **in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.